UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT GIBBENS,

        Plaintiff,                     Case No. 2:14-cv-185

v.                                      HON. GORDON J. QUIST

COMMISSIONER OF SOCIAL SECURITY,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

In June 2007, Plaintiff Robert Gibbens filed an application for disability and disability insurance benefits. In October 2007, Plaintiff filed an application for supplemental security income. See Transcript of Administrative Hearing at pages 206-217 (hereinafter Tr. at \_\_\_). Plaintiff alleges that he became disabled due to neck, shoulder, back, arm and knee pain. Plaintiff alleges that he is unable to use his arms, especially his non-dominate left arm. Tr. at 93. Plaintiff is 5'8" and was 300 pounds at the time of the hearing. Tr. at 94. At his heaviest, Plaintiff probably weighed 315 pounds. Tr. at 95. Plaintiff's application was denied initially and Plaintiff requested an administrative hearing before an Administrative Law Judge (ALJ). ALJ Thomas Merrill denied Plaintiff's claims. Tr. at 120-32. On February 10, 2011, the Appeals Council remanded the case to an ALJ for further proceedings. Tr. at 134-136. On February 12, 2013, ALJ Patrick J. Toal held a hearing. Tr. at 37-97. On April 3, 2013, ALJ Toal issued a decision that Plaintiff was not disabled. Tr. 21-31. The Appeals Council denied Plaintiff's request for review making ALJ Toal's decision the final decision of the

Commissioner. Tr. at 2-7. At the hearing, Plaintiff, who was represented by counsel Robert J. Gray, and Vocational Expert Stuart L. Gilkison testified.

Plaintiff testified that he was 30 years old and married at the time of the hearing. Tr. at 45. Plaintiff attended special education classes and has a tenth grade education. Tr. at 46. Plaintiff stated that he takes care of his children and "more or less took over them as a parent." *Id.* Plaintiff never tried to obtain a GED because he does not think that he could. Tr. at 48. Plaintiff stated that he could not work because of his lower back pain, knees, shoulder and neck. Tr. at 49. Plaintiff was able to perform heavy work for a couple of years, but indicated that he was always in pain. Tr. at 49. Plaintiff worked at Walmart in 2003 and 2004. Tr. at 50. The heaviest weights he lifted were up to 25 pounds. *Id.* Plaintiff was on his feet all day, but was always in pain. *Id.* Plaintiff left that position because of his lower back, knees, shoulder and neck and never looked for another job. Tr. at 51. Plaintiff did not seek vocational training. Tr. at 51.

In 2006 and 2007, Plaintiff would normally wake-up and sit in the chair and watch television. Tr. at 52. Plaintiff stated that his wife had to help him shower and bathe. Tr. at 53. Plaintiff could drive, but not very far. Tr. at 54. Plaintiff could not do laundry, because it would hurt his back to pick up clothing. Tr. at 54. Plaintiff liked to watch movies with his children and play on the computer, including emailing family and using Facebook. Tr. at 55-56. Plaintiff uses the computer about one hour a day and then likes to take naps, sleeping about four or five hours a day. Tr. at 56-57. Plaintiff had not mentioned his sleeping difficulties to his doctors. Tr. at 57. Plaintiff used a cane or a walker to get around his house when his knee popped out of place in 2007. Tr. at 60. Plaintiff stated he mainly used the walker with his right arm. Tr. at 61. Plaintiff used either the cane or the walker depending on the floor surface. Tr. at 62. Plaintiff does not handle the family finances, because he is not good at counting. Tr. at 64.

Plaintiff's wife drove him to counseling and to see doctors. Tr. at 67. Plaintiff has had trouble with his left arm since birth, and problems with his neck down to his arm including foot numbness. Tr. at 67. Plaintiff does not like to go out in public because people stare at his arm. Tr. at 67-68. Plaintiff saw Mike Varney weekly for mental health counseling between 2006 and 2011. Tr. at 68. Plaintiff visited nurse practitioner Tracey Nelson. Tr. at 69. Plaintiff was never given medication for depression. Tr. at 70. Plaintiff indicated that his mental health interfered with his work, but he was unable to get help because nothing was available in the area where he lived. Tr. at 71.

In 2011, Plaintiff's lower back popped while getting into a vehicle and he lost feeling from the waist down. Tr. at 72. The doctors said that it was muscular and gave Plaintiff pain medication. Tr. at 73. The numbness in Plaintiff's legs was caused by diabetic neuropathy. Tr. at 73. Plaintiff was told that nothing could be done for that. Tr. at 74. The doctors have told Plaintiff to exercise. Tr. at 74. Plaintiff received two or three weeks of physical therapy. Tr. at 75. Plaintiff has received pain medication. Tr. at 79.

Plaintiff had neck surgery in January just before the hearing, but it was too early to tell if the surgery was successful. Tr. at 75. Plaintiff had not had a follow-up visit with his surgeon at the time of the hearing. Tr. at 76. Plaintiff indicated that his pain got worse, so he made the decision to see Dr. Coccia and Dr. Szloboda. Tr. at 80. Plaintiff stated that he was treated for diabetes and gout and that the tests on his legs came back normal. Tr. at 81-82. Plaintiff indicated that the pain medication helped him. Tr. at 83.

The Vocational Expert testified that Plaintiff had performed medium, unskilled labor in his previous employment. Tr. at 86. The ALJ asked the Vocational Expert whether a hypothetical individual thirty years old who never graduated from High School, who is unable to lift and carry

3

more than ten pounds frequently and twenty pounds occasionally, who is unable to climb ladders, ropes, scaffolds, stairs, balance, stoop, kneel, crouch, crawl more than occasionally, effectively use his non-dominant left upper extremity except to assist his right extremity, would need to avoid exposure to vibration and hazards, would be unable to maintain concentration necessary to perform detailed or complex tasks, would be unable to have more than occasional interaction with co-workers, supervisors or the public, could find employment in the national economy in the light level. The Vocational Expert found that such an individual could not perform Plaintiff's past work. However, the Vocational Expert concluded that there would exist 7,318 order filler positions, 2,183 shipping clerk positions, and 5,897 production inspector positions that such an individual could perform. The ALJ then asked if that same hypothetical individual with additional limitations of only performing sedentary work, unable to lift and carry more than 10 pounds, unable to stand or walk more than two hours in an eight hour day, and use of a cane to ambulate could perform work in the economy. Tr. at 88. The Vocational Expert found that there existed 621 packer positions, 612 inspector positions and 198 production helper positions. Tr. at 89. When the ALJ added that the hypothetical individual would need unscheduled breaks, the Vocational Expert concluded that the individual would not be employable. Tr. at 89.

      Plaintiff's counsel asked whether jobs existed if the individual in the first hypothetical could not complete reports to the point of counting, and could not use computers for operation. The Vocational Expert stated that such limitations could eliminate some shipping clerk positions. Tr. at 90. If the individual used a cane to ambulate, and there exists no effective use of the non-dominant hand, the Vocational Expert stated that would eliminate employment. Tr. at 91. Similarly, the Vocational Expert testified that if the hypothetical individual needed to miss three days of work each month such a limitation would eliminate employment. Tr. at 92.

The ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy given Plaintiff's residual functional capacity (RFC) and therefore concluded that Plaintiff was not under a "disability" under the Social Security Act (20 C.F.R. § 404.1520(g)). Tr. at 30. The ALJ's decision became the agency's final decision when the Appeals Council denied Plaintiff's request for review. Plaintiff now seeks judicial review of the agency's final decision denying his request for disability benefits.

The findings of the ALJ are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Human and Health Serv.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). This Court must affirm the ALJ's findings if sufficient evidence supports the decision even if evidence supports an alternative conclusion.

The ALJ must employ a five-step sequential analysis to determine if Plaintiff is under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ determines Plaintiff is disabled at a step, the analysis ceases and Plaintiff is declared as such. 20 C.F.R § 404.1520(a). The ALJ found that Plaintiff had sufficient quarters coverage to remain insured through September 30, 2011. Tr. at 21. Therefore, Plaintiff had to show that he was disabled for purposes of social security benefits on or before September 30, 2011. Tr. at 23. Plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 1, 2006. Id. The ALJ found that Plaintiff had the severe impairments of Erb's Palsy of the left extremity, obesity, peripheral neuropathy, diabetes, degenerative disc disease of the lumbar and

5

cervical spine, general anxiety disorder, attention deficit hyperactivity disorder (ADHD), dysthymia, and borderline intellectual functioning (BIF). *Id*. The ALJ found that these impairments or combination of impairments did not entitle Plaintiff to disability benefits. The ALJ rejected Mr. Varney's opinions based in part on the fact that no records exist showing that Mr. Varney was working with Plaintiff as early as January 2008, and the records only show that a psychological evaluation was made on February 2009. Mr. Varney also purportedly made an evaluation in December 2010, but used the identical document that was submitted to the Social Security file in 2009, as support for this latter evaluation. Further, there is no evidence or proof submitted regarding Mr. Varney's qualifications. The ALJ also found fault with Mr. Varney's assessment that Plaintiff "has marked to extreme limitation in his ability to understand, remember and carry out instructions, to the extent he is unable . . . . to perform even basic activities without assistance." Tr. at 25. The ALJ pointed out that this was inconsistent with Plaintiff's employment history and his testimony that he had to terminate his employment because of his physical problems and not due to his lack of mental abilities. Tr. at 25. Moreover, the ALJ found that Plaintiff can watch television, prepare simple meals in a microwave and "keep[ ] an eye" on his children. Tr. at 26.

The ALJ concluded that Plaintiff had mild restriction in daily living activities, moderate difficulties in social functioning, functioned with borderline intelligence, but showed a capacity for unskilled work and no episodes of decompensation. *Id*. The ALJ further explained Plaintiff's medical limitations:

> More recently, the records show the claimant's left upper extremity to be functionally useless except to assist the dominant right upper extremity with gross movements (Exhibits 26F and 8F).
>
> The claimant has a history of degenerative changes to his spine. Most recently, an MRI scan demonstrated C6-7 stenosis and on January 10,

6

2013, the claimant underwent a discectomy and fusion at that level (Exhibits 27F and 22F).

An MRI of the claimant's lumbar spine in June 2012, revealed degenerative changes at the L4-5 and L5-S1 levels (Exhibit 21F). He has a history of diabetes, the claimant's primary care physician, Katalin Szloboda, M.D., indicated in a letter, dated February 6, 2013, that she had been treating the claimant since June 2012 but he had seen other doctors in her office since about 2006. She identified his health problems as: 1) poorly controlled diabetes (which does not require insulin but does require the medication metformin); 2) a low thyroid (causing fatigue); 3) degenerative disc disease of the lumbar and cervical spine; 4) Erb's palsy of the left arm; 5) morbid obesity (Exhibit 24F pp. 1-2). Dr. Szloboda further indicated, "As a result of his diabetes as well as contributed to by his degenerative dis[c] disease, he has peripheral neuropathy and weakness in both lower extremities. <u>This was tested by EMG</u>" [emphasis supplied] (Exhibit 24F p.2).

The claimant had complained of pain and paresthesias in both lower extremities but an EMG on November 21, 2012 indicated, "Needle electrode examination of both lower extremities and paraspinals failed to reveal significant abnormality" (Exhibit 26F p.4). Therefore, it is difficult to understand Dr. Szloboda's conclusion, regarding her diagnosis of neuropathy, when the EMG gives no basis for it.

Dr. Szloboda opined, in a form attached to the February 6, 2013 letter, that the claimant could only occasionally lift 10 pounds (with his right arm only); could sit only 1-2 hours; stand less than two hours, would need to be able to sit or stand at will and would have limitations in pushing/pulling (including operation of hand and/or foot controls) in both upper and lower extremities (but she did not specify what those limitations would be) (Exhibit 24F p4).

She concluded in her letter that "Based upon all of his conclusions and physical limitations and restrictions, he should be eligible for social security disability" (Exhibit 24F p2).

Dr. Szloboda's opinion is given little weight for several reasons. First, it is based (at least in part) on the erroneous assumption that an EMG supports a finding of neuropathy, when it does not. Second, the claimant's cervical discectomy should alleviate some, if not all of his upper extremity pain (Exhibits 27F and 22F). Third the claimant's lumbar degenerative disc disease is rather mild with no evidence of neurological abnormalities. His ability to sit only 1-2 hours is not

7

supported by objective evidence. Fourth, the state agency consultant felt the claimant could perform a less than full range of light work, which allowed the claimant a cane to ambulate (Exhibit 12F). Although this Decision is from 2008, there is little evidence that the claimant's objective medical condition has changed much in recent years. Therefore, the opinion is given significant weight.

The claimant's counselor, Michael Varney also filled out a form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" dated February 3, 2009 (Exhibit 15F). In that form, Mr. Varney opined that the claimant could sit 80 minutes total in an 8 hour workday, stand 16 minutes and walk 16 minutes in the same work day and that he could lift nothing at any time (Exhibit 15F). He noted other extreme physical limitations as well.

This opinion is given no weight whatsoever as there is no indication that Mr. Varney has any physical medical training at all. He is some type of psychological counselor. Further, the extreme limitations, which come nowhere near being supported by the objective medical evidence, seem to indicate that Mr. Varney is willing to fill out any form, which may help his client receive disability benefits.

The undersigned notes that the claimant has significant limitations (including his morbid obesity) but considering the claimant's activities (especially in watching his children, preparing them for school, etc.) and the relatively mild objective findings (especially the EMG that did not find evidence of lower extremity neuropathy or radiculopathy), the claimant should be able to perform sedentary work activity. However, he is unable to have effective use of the left upper extremity except to assist the right with lifting. His chronic back pain makes him unable to climb ladders, ropes or scaffolds and limits him to only occasional balancing, stooping, kneeling, crouching or crawling. The claimant testified he must be able to use a cane to ambulate and because of that, must avoid concentrated exposure to vibration or hazards.

The claimant's mental health issues are discussed in detail above. His borderline intellectual capabilities, dysthymia and ADHD make him unable to maintain the attention or concentration necessary to perform detailed or complex tasks. He testified that he gets anxious in public because he feels people look at his shortened left arm. Therefore, he should have only occasional interaction with co-workers, supervisors or the public.

Although the claimant has significant functional limitations he is not precluded from all full-time work.

Tr. at 28-29.

> Plaintiff argues that:
>
> 1. The ALJ failed to comply with SSR 00-4p as Required by Law. As a result, the Commissioner may not Rely on the Vocational Expert's Testimony and Cannot Satisfy her Burden of Proof at Step Five.
>
> 2. The Jobs provided by the Vocational Expert, and Adopted by the ALJ to Satisfy the Commissioner's Burden at Step Five, failed to Establish that Sufficient Number of Jobs Exist in the National Economy.
>
> 3. The ALJ erroneously rejected the Opinion of the Treating Source, Dr. Katalin Szloboda.
>
> 4. The ALJ failed to provide a Complete Hypothetical Question to the Vocational Expert which Incorporated Limitations in Concentration, Persistence and Pace.

Docket #13 at 2.

Plaintiff first argues that the ALJ failed to comply with SSR 00-4p as required by law, by not making the inquiry whether the Vocational Expert's testimony deviates from the Dictionary of Occupational Titles (DOT) or the Selective Characteristics of Occupations (SCO). However, contrary to Plaintiff's argument, the ALJ asked the Vocational Expert if the testimony was consistent with the DOT. The ALJ stated:

> ALJ: Thank you. Is your answer consistent with the DOT and related sources?
>
> VE: Yes, your honor.

Tr. at 89. Plaintiff also argues that the number of jobs stated by the VE did not establish a sufficient number of jobs in the national economy to show that Plaintiff could still perform work in the national economy based upon his restrictions. The Vocational Expert testified that a hypothetical individual with Plaintiff's medical conditions and limitations could perform work as a packer with 621 positions,

9

an inspector with 612 positions, and as a production helper with 198 positions. Tr. at 88-89. The ALJ found that there existed a total of 1,431 positions that Plaintiff could perform. The Sixth Circuit has held that 1,350 jobs was a sufficient number of jobs to represent work in significant numbers that the plaintiff could perform. *Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988). Further, "[t]he Commissioner is not required to show that job opportunities exist within the local area." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999).

> The regulations implementing the Social Security Act clarify this point: "it does not matter whether ... [w]ork exists in the immediate area in which you live..." 20 C.F.R. § 416.966(a)(1)(1997). However, the regulations also state that jobs "existing in the national economy" do not include "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [plaintiff] live[s]..." 20 C.F.R. § 404.1566(b). . . . Furthermore, the fact that plaintiff lives 70 miles from the nearest metropolitan area is a factor extrinsic to her disability and not to be considered. Congress intended to "provide a definition of disability which can be applied with uniformity and consistency throughout the Nation, without regard to where a particular individual may reside..."

*Id.* In the opinion of the undersigned, the Vocational Expert's testimony established that a significant number of jobs exist that Plaintiff could perform.

Plaintiff argues that the ALJ discounted the opinion of his treating physician Dr. Katalin Szloboda. As stated above, the ALJ explained the reasons that he discounted Dr. Szloboda's opinion that Plaintiff was disabled. Although Dr. Szloboda stated that Plaintiff had peripheral neuropathy and weakness in both extremities which was tested by EMG, the EMG actually revealed that both lower extremities and paraspinals were without significant abnormality. Moreover, it was not improper for the ALJ to conclude that Plaintiff's most recent cervical discectomy surgery in January 2013, might relieve some of his pain. The ALJ was not, as Plaintiff argues, playing doctor or interpreting conflicting test results. He merely made a logical assumption that Plaintiff might

experience some relief from a recent surgery.  There existed no contrary evidence in the record to support any other conclusion.  Moreover, in the opinion of the undersigned, even without such relief from pain, the evidence does not support a conclusion that Plaintiff was disabled and unable to work on or before September 30, 2011.

Plaintiff argues that the ALJ failed to provide a complete hypothetical to the Vocational Expert that considered limitations in concentration, persistence and pace.  However, the ALJ included in his hypothetical question to the Vocational Expert limitations in maintaining attention or concentration necessary to perform detailed or complex task and only occasional interaction with co-workers, supervisors or the public.  Tr. at 87.  In the opinion of the undersigned, the ALJ presented a complete and accurate hypothetical question to the Vocational Expert that took into account each of Plaintiff's limitations.  There is substantial evidence in the record that supports the Commissioner's decision that Plaintiff is not disabled as defined by the Social Security Administration.

Accordingly, the decision of the Commissioner is AFFIRMED and Plaintiff's request for relief is DENIED.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: August 17, 2015                                         /s/ TIMOTHY P. GREELEY
                                                                                   TIMOTHY P. GREELEY
                                                                                   UNITED STATES MAGISTRATE JUDGE